Thank you very much. Good morning, Your Honors. Gary Burcham on behalf of Appellant Shane Ferguson. In light of this Court's published opinion in the McAlla case back in September, I'd like to focus this morning on the non-jurisdictional issues in the case, the first one of which is the issue regarding the District Court's ruling to allow Mr. Ferguson to represent himself at trial and at sentencing, and the second issue being whether the District Court imposed a legal and a reasonable sentence in this case. The record is clear in this case that Mr. Ferguson had an extraordinary approach to defending this case. The District Court referred to it as consisting of erroneous and frivolous legal concepts, and from literally the start of the case up until the moment he received 40 years from the District Court, Mr. Ferguson's defense of this case did not concern the merits of the two counts of the indictment. It entailed things like the UCC, the corporate law, maritime and admiralty law, and various completely irrational and nonsensical legal theories with respect to the charges. In April of 2006, Mr. Ferguson moved the District Court to allow him to represent himself, and the District Court, not surprisingly, was fairly hesitant to go down that path, but ultimately ruled that essentially it had no choice given the fact that Mr. Ferguson had been found to be competent under the Dusky standard to stand trial in the first place. The law is a little bit different now than it was when the District Court made that decision because of Edwards. And we're faced with potentially the issue of not knowing how the District Court would have resolved this problem had it known that Edwards was the standard. If we can't tell what the District Court would have done under the Edwards standard, what should we do? Should we say, well, we're not going to apply it retroactively, or should we say, well, it's really just an interpretation of Feretta, we should send it back and find out what the District Court would have done? How do we resolve that dilemma? I think that the first option is not a good one. I think the second option would probably be the more appropriate one. The government points out in its briefs that the expert, Dr. Farristein, who is retained to examine Mr. Ferguson, found that Mr. Ferguson, or believed that Mr. Ferguson was malignant, that he was creating these concepts to try to obstruct the proceedings and create issues in the case. Interestingly, the District Court never really latched on to that decision. The District Court made statements that it was possible, maybe even likely, that Mr. Ferguson was doing this intentionally and understood that these were unreasonable concepts. But the District Court never came to the same conclusion as the doctor that this was something that he was creating. He never made findings, one way or the other, beyond the one saying he was competent. Exactly. And I would submit that a person has a fixation, this unreasonable, irrational fixation on legal concepts. That's, from a legal standpoint, not all that far away from someone like the gentleman in Edwards, who just has an inability to let's suppose that we were to remand it, to say to the court, well, knowing what we know now under Edwards, what would you have done? And if you would have allowed him still to represent himself, everything's fine. If you would not, then he might get a new trial. But wouldn't the judge be able to say at that point, based on everything he has seen so far, would it be permissible for him to say, look, I am now making a finding that this is not, that he was competent and he was trying to salt the record with nonsense, either to confuse the jury or to set up an issue for appeal and I'm not going to countenance that. It's not what Edwards is talking about. That would be a potential outcome, as would yours, right? Sure. That's certainly a danger that the District Court could follow. Wouldn't you want the opportunity, though, to get your own expert and to try to persuade the judge? You don't want to be stuck with the record as it is now. Absolutely. I think upon remand, the proper thing to do would be to flush out this issue further with experts from both sides in light of... Have an evidentiary hearing about his state of mind as best you can determine. State of mind when? Part of my problem with this is that I'm not sure what another expert would have to work with because you can't go back and interview him at the time of trial. Correct, but I've met him. His approach to this case is the same now as it was back when he was in trial. He sent a letter to the court, which is in the record, chastising me for not raising these same issues he was wanting to present during the case and so, for what it's worth, Mr. Ferguson has not changed his tune with regard to his fixation on these legal theories and his belief that these legal theories indeed were the appropriate way to defend the case and were viable legal theories regarding jurisdiction and other aspects. Can I ask... I'm sorry. I really don't understand you weren't the lawyer. Was there the original defense counsel? Did he get an expert as far as you know? An opinion even though he didn't offer it? The expert was retained. Dr. Vickery was retained after the trial and prior to sentencing and Dr. Vickery came out similarly to the original doctor who did the competency evaluation with regard to Malene Green or not Malene Green, but as far as a defense expert retained from the defense to present evidence to the court... At the time. Exactly. Was there? No, there was not. And again, I would submit that... Maybe you have a 2255. That's not in our bailiwick right now. And so I think at the very least a remand is appropriate in light of Indiana v. Edwards so that the district court can now examine this issue in light of almost this new step that the Supreme Court created where just because someone is competent to stand trial and is competent to even to waive counsel, there's still that additional analysis of can this person mentally defend a case in a reasonable fashion or should an attorney be appointed for that person for trial? Does it make a difference about the stage of the case? I mean is the trial and the sentencing stage is there a line to be drawn between those two? I'm thinking of the particular facts of this case, which quite candidly I don't know that there was a defense to guilt here given the record that we've got and given the worthy efforts of his counsel at the time to strike the best possible arrangement that he could. It's at the sentencing stage I really sit back and wonder what's going on because at that point the advantage of malingering seems to dwindle. And yet he apparently continued through that stage. Was there any separate examination of this question before they went into sentencing? The consideration of counsel being appointed at that point? Well, the district court to his credit brought this up throughout the case and really felt bad about Mr. Ferguson doing this to himself and representing himself and it was Mr. Ferguson's choice following trial that he wanted to continue to represent himself. Your Honor's point I think is spot on in this case because while there may not have been a strong defense at trial had counsel represented Mr. Ferguson, the sentencing just begged for counsel to file papers and to make arguments on behalf of Mr. Ferguson. The district court repeatedly during sentencing made comments to the effect of if you don't argue these issues to me I'm going to be forced to do what the government wants. Not only is that improper under section 3553A, but that should have been in my mind a flashing light to get a lawyer for this guy. He's already been convicted. He's facing 40 years for these two counts. He needs an attorney to present these issues to the court and to argue his case for sentencing. Regarding going back to sentencing, I've set forth essentially five reasons why a remand is required in this case for sentencing. The first reason is that the district court has failed to compute the guidelines. Post-Booker of course the district court remains under a duty to properly compute the guidelines and in this case the district court simply adopted the guidelines of the default. But before the district court did that, it actually said that I think these guidelines are incorrect, but I don't think it matters so I'm just going to go ahead and adopt the total offense level of 49, which is a live guideline range and then impose the maximum of 40 years. So not only did the district court not as required compute the guidelines, it actually acknowledged that the guideline range that it used for the ultimate sentence was likely an incorrect guideline range. The 3553A factors were a whole separate problem. In the best of all possible worlds, what was it, 36? I think in the best of all possible worlds probably a 41. Either a 36, that's a little bit of a stretch on my side, I think a 41 probably is this. 41 would do what again? 324 to 405. If the judge went low end, that's 13 years less than what he's serving right now. The 3553A factors, aside from not analyzing those factors, again as required by this court and the U.S. Supreme Court in Rita and Gall, my main problem with that was the district court's explicit refusal to consider the Adam Walsh Act with respect to the sentence in this case. The district court numerous times during the sentencing hearing, and I can respect this, said I'm not willing to take a chance on this guy. I'm not going to give him a sentence that is less than the maximum because I don't want to take the chance. What the district court explicitly refused to consider is it's not taking the chance. There's new federal law, the Adam Walsh Act, section 4248, which puts the risk or the decision in the hands of the Bureau of Prisons or the Department of Justice. And so for the district court to impose the maximum sentence in large part because it was afraid to take a chance on a person who might reappear in the future was completely unreasonable when there's a new statutory scheme directly on point to address release of sexually dangerous persons and that's exactly the sort of analysis that's required under section 3553A. It was brought to the, the defense counsel blurted it out, it was that important, he blurted it out during sentencing and the district judge says too little is too late. I'm not considering that 40 years and that was improper. My final argument in the last minute here concerns just the reasonableness of the sentence. Not for a second am I going to stand here and minimize or defend what Mr. Ferguson did. It was horrible. It was reprehensible and a significant punishment is required. 40 years for this conduct, however, I would submit is simply excessive. He was 35 at the time of trial, I believe he's probably 37, 38. Again, there's a scheme in place to make sure this gentleman is not released to the streets until he is deemed. And what would be the bottom line of 41 again? Bottom line of 41 is 324. That's 156 months under the 480. So, how old would he be  in his early 60s? And again, the door is not going to open to that BOP facility until somebody in the BOP says this guy is not a risk. Or as little risk as we can possibly guarantee. I'd ask this court, in addition to remanding the case for further hearings regarding the Edwards issue, also to find that the sentence imposed was unreasonable and was illegal and to vacate the sentence as well. Thank you. Good morning, Your Honor. May it please the Court, Rupika Swamin for the government. Let me jump into this to start with Indiana v. Edwards. The government's position is that Indiana v. Edwards does not apply and that we actually know how the district court would have applied that case. First of all, how do we know? Because it seemed to me that the district court more than once expressed the view that the court's hands were tied if the person was capable of going to trial. That is, if he was competent to stand trial, then that was the only inquiry he really was allowed to make. That's how I read some of it. I mean, the district court went back and forth and did a lot of hand-wringing, but at least some of the comments suggested that the district court felt that there was only one standard and it was an on-off switch. And Edwards, although in some sense it does seem to change things, purports not to be changing things and says well, it's not quite an on-off switch. First there's the on-off switch and then there's the dimmer switch. And if the person's mental state is such that they can go to trial but they really can't represent themselves, the court doesn't have to let them do that. And why shouldn't the district court have an opportunity to think about it, knowing that that's the law now? Your Honor, I think that's because it would violate both Feretta and the Supreme Court's decision in Goddard v. Moran. I see the Indiana v. Edwards case as a very narrow carve-out. It's an exception. And the trigger for that carve-out is severe mental illness, which defendant concedes in his papers here is nowhere on the map. What's conceded in the case of Edwards? Isn't that part of the problem? I'm sorry? Isn't that part of the problem that there was no, you know, no evaluation by his doctor whether this was a, you know, whether this was a sham or I mean, how could we not be troubled that this guy has consistently, even to this very moment, carried on about this? Now, he could be malingering, but this is a pretty good show that he's gone and carried on. Well, Your Honor, actually, let me correct the record first. First of all, there were three experts that evaluated this defendant. Stateside, Dr. Owens. The court appointed Dr. Sal Ferrestine, who the defense counsel agreed to as to be the court appointed evaluator. Dr. Ferrestine found that he was malingering and was following a scheme brought to him basically by jailhouse inmates. There is on the record, although I'm struggling to find it in the GR, the district court's assessment of that and saying, I actually thought it was obstructionism, but Dr. Ferrestine is malingering. I can agree with that. The third expert is actually the defendant's expert. In this case, the defendant had advisory counsel at all three stages, pre-trial, trial, and then at sentencing. Now, at sentencing, advisory counsel knew that Judge Letts would only allow one expert. He doesn't like a battle over the experts. So he actually came up with Dr. Vickery as this guy that was going to come in and bring in 18 mitigating factors plus five for a gland total of 23 mitigating factors at sentencing. Now, that was defendant's expert. Dr. Vickery was the defendant's expert. And the defendant's expert goes one step farther than Dr. Ferrestine did. Dr. Ferrestine explains the mechanics of how he comes up with this jurisdictional scheme, how he's going to game the system by using the same words, UCC, special appearance, yada, yada, yada. But Dr. Vickery takes one step further, and I would direct the court's attention to the GR at 406 and 407. And Dr. Vickery actually explains the motivation for this bizarre behavior. He says, look, the defendant is a person who faced a hopeless situation. There was no defense. There was no excuse. There was no justification. He felt hopeless. There was nothing that he could do. This was a terrible, terrible situation. So what do you do? You inject error into the proceeding to the extent that you can't, or alternatively, you sit at counsel table by yourself and try to get a sympathy ploy in play. And, Your Honor, I don't understand the tension. I raised the question about whether there's a difference between the trial and sentencing. Because, frankly, that strikes me as a pretty plausible explanation because there was no defense at trial. But in the world of sentencing, there's always an explanation for something. And so that's where I would have expected somebody behaving with a modicum of sense to say, well, I've lost. Let's see how to make the best of a bad situation. And the best of a bad situation is not made by continuing to spout gibberish. And so I sit there and wonder, well, you know, at that point, something is really off the tracks. And I think I sympathize with the district court saying, what am I supposed to do now? And so he watched the train run off the tracks. And he just about said, I'm watching the train running off the tracks here. Are we supposed to let that happen? Yes, Your Honor. The district court is supposed to let that happen. And let me explain why. I know this is difficult. But, you know, when you look, for example, when you look at U.S. v. Farhad, in a special concurrence, Justice Judge Reinhart sets forth that that's a valid waiver of the right to counsel. You know, we already have the Supreme Court telling us that there's only one competency standard. If you're competent to stand trial, you're competent to waive counsel, period. Then you have a situation, and it's a tension. It's a tension between the Fifth Amendment and the Sixth Amendment right to waive counsel. You have what is ineffective counsel. Let's just look at the facts in Farhad. In Farhad, you have a defendant who's facing 19 counts. He doesn't even have a proper command of the English language. At closing, he actually tells the jury to find him guilty and return a true verdict. I mean, this man is utterly confused by the legal process. He calls the witnesses defendants and has to be admonished repeatedly. I understand the tension. I lived through this trial. It is certainly more convenient for the prosecutor, for the district court, for everyone to represent it by counsel. Breyer. Maybe the problem is Farhad and Feretta. Kagan. I'm afraid that's over my pay grade, sir. Breyer. Well, many times I sit there and say, Feretta, dream this up. You're right. It's a lot easier for everybody, including the defendant. But again, as Judge He knows the game is up at the sentencing. I can't – what's the rationale for his continuing this? Kagan. Well, Your Honor, you know, this is a troubling defendant. He does have a series of strange fixations. He also has a fixation on having sex with a 4-year-old. I mean, it is hard to unravel this person. But I don't believe that after three experts have determined that he is competent and the defense counsel has conceded, not only is there no severe mental illness here, there's no mental illness here. Breyer. I think we've explored that. Could you turn to the issue of the sentencing and what some of the things the judge did there? Kagan. Yes, Your Honor. First of all, if I could just open up the concept of the sentencing. This was actually a two-part sentencing, which is sort of a Judge Lett special. What he wanted to do, basically, was give the defendant's expert an opportunity to have a hearing, and that hearing was held on October 30th. And it was very, very He talked about the nature of the offense, that this was a situational offender. He talked about the defendant's personal history categories. He talked about public safety, deterrence, and the fact that the defendant now was seeking help. And also, the defendant at sentencing, of course, had the advantage of advisory counsel, because advisory counsel there was there to explain the guideline sentence to him, and actually admitted that he provided an outline of the legal arguments to defendant to make it sentencing. He chose, again, he actually asked the court to honor his right to represent himself. The same as in Lopez v. Thompson. At sentencing, again, he asserted his right to represent himself. He, again, was agreed to advisory counsel on the record, but that was all that he was going to have. I believe that the court really did take its time to develop an individualized inquiry in this case. In addition to the PSR, which was unrefuted, defendant said there was no errors in it. He had the government's papers that set forth the 3553 factors. He had Dr. Vickery in a separate hearing on 3553 factors. And then the defendant asked to allocute for 90 minutes. He spent 90 minutes telling the judge about himself, his life, his loss, his struggles. Those are the – He sat there through this? Yes. That's when you really wanted him to have a lawyer. Everybody was being held hostage. He made a very thorough record for himself. And he did exactly what Ferretta allows him to do. He spoke for himself. And I – Your Honor, there is no procedural error. As you know, we're – it's a plain error standard. The court correctly calculated the offense level as 49, criminal history 1. He has the right to rely on an undisputed PSR. The facts in  I've looked at every single specific offense adjustment and adjustment. And I don't know where defense counsel is coming up with 41 months, but 41 effects level calculation. But maybe my math is not working fast enough. I – you know, all of the enhancements are supported by the PSR, which was undisputed, which the defendant actually found no error in. What about the recent statute? Oh, the civil – Not to consider that. Well, if I could correct the record on that, Your Honor. The civil commitment statute under Adam Walsh, one – I think the judge correctly noted it. It's highly speculative that it would apply, especially in this case. Defense counsel can't have it both ways. On one hand, he's saying this guy is low risk, low risk. On the other hand, he's going to be eligible for civil commitment. It doesn't quite work that way. Somebody who's determined to be civilly committed. More importantly, you have to look at this from the standpoint of the district judge. This is not – civil commitment is not a determination that's up to him. It's something that is developed by the Bureau of Prisons. It will be decided much later in the proceedings. They have a separate review process for that, and that decision is made not by the sentencing district judge, but whichever district judge has the misfortune of having the Butner Sex Offender Treatment Center in their jurisdiction. So for the judge to have to rely on something completely speculative makes no sense. Here, the judge sentenced the defendant well within the guideline range. Forty years is well within a guideline range of life. And he was looking at life from an offense level of 43 on. Here, we calculated correctly an offense level of 49. The PSR could have been off by six levels, and he would still be looking at life. There is no procedural error in this case. And more importantly, is this a substantively reasonable sentence? I would argue that it is, Your Honor. What you have here is somebody who all three experts have concluded is an entrenched pedophile with an eight-year history of collecting child pornography, whose level of sexual abuse of this child, even his own expert admitted, would not have stopped if the child herself had not cried out, and that every level of violence against this child accelerated over time. There was nothing in this record that didn't support the sentence that he imposed, and it's well within the guideline range, which I believe this Court has held is generally viewed to be reasonable. I don't know if the Court had any specific questions as to the sentencing guideline calculations that I could address. I don't believe so. The only other point I actually wanted to make was as to the defendant also made one other argument, that there should be different standards of FRERETA at different procedures within, depending on where the defendant is, whether he's going to trial or whether he's going to sentencing. And I just wanted to note for the Court that in Lopez v. Thompson, the special concurrence that Judge Wallace writes in that, he actually notes that he agrees with that and thinks that the FRERETA warnings for sentencing should actually require, should be less extensive, because sentencing actually requires less specialized knowledge than is required for somebody to go to sentencing as it would to trial, which sort of flies in the face of defendant's argument that somehow we should have this heightened competency requirement. I don't usually disagree with Judge who was it? Wallace. Judge Wallace, but I disagree with him as a district judge. Sentencing is, you know, a lot more important. But in this case, you know, he had the most help at sentencing. I mean, he had two people speaking. I realize that. I mean, I feel that there were protections in place. I certainly understand the tension that the Court feels. I know that Judge Letts felt that tension very, very acutely. He did try on four different occasions to set forth all of the dangers and disadvantages of self-representation. But he did ultimately feel that he did have to watch this train wreck, because the defendant fundamentally has that right to assert the dignity of choice. Well, he was clearly struggling. And the transcript, he was very candid in terms of what he was faced with. At a couple of points, I had the feeling that he was, it may have been an effort to persuade the defendant. In fact, I suspect it probably was. But he was using words like, you know, if you don't step up and if I don't hear something reasonable, if you don't have a lawyer, I'm going to be powerless. I'm going to have to do what the government asks, which is not the law with regard to that corner and wind up giving what he did because there was no opposition, even though what the statute requires is an independent evaluation by him. I don't believe so, Your Honor. And I'll tell you why. In part, because I felt that the judge hamstrung the government at sentencing by only being willing to listen to the defendant's expert. You know, the defendant basically got a second hearing on October 30th with his expert setting forth all of these mitigating factors, and the judge had no interest in having us present another expert for that reason. My sense was what he was trying to do was goad the defendant into getting a little bit more assistance from Mr. Meza, who he, by the way, the judge handpicked to replace his first counsel. I mean, he was careful about picking a very seasoned panel attorney. I believe he intentionally picked a man so that he could represent himself a little bit, but this was not a defendant who was willing to do that. He asserted his dignity to be able to represent himself. So he may not have wanted to hear any more from the government because he thought, I'm going to do what the government asks unless we have a defense, and we don't have a defense yet. So it's just everybody was frustrated by this, and it's evident that everybody's trying to do the right thing except the defendant, who seems determined to do the wrong way. No, and I really felt that in the sentencing and even in the earlier colloquy with Dr. Vickery, the thing that really was weighing on the judge's mind was this issue of recidivism, is how likely is this guy to reoffend, because the level of abuse on a four-year-old is significant. And, you know, I think he really considered Dr. Vickery's assessment. He just didn't buy it. You know, he did not see how you could say that an entrenched pedophile could be low risk, and I think a district judge has the right to do that. He can listen and consider, and then he can give it less weight than the defendant would have liked. Thank you. Thank you, Your Honor. And I believe you have some rebuttal time remaining, Mr. Ferguson. Your Honors, Mr. Ferguson was absolutely fixated on these principles. This wasn't, in my opinion, this wasn't obstructionist tactics. This wasn't a person who was doing this because he had nothing else to lose. This was his defense, and he's going to go to the grave with this defense. He might. That's the problem. No, Your Honor. The fact that someone else at the MDC was saying similar things doesn't change the fact that this was Mr. Ferguson's honest belief that this was a viable defense. So you say, but we don't really have a district court finding that that's the case any more than we have a district court finding or clear finding that it's malingering. And that's actually my struggle here. If the district court had just said flat out, I've listened to all this, and I hereby find that this person is malingering, and if he wants to do this to himself, it's really his problem. Or to say he can't help himself. This is a mental illness, and he's just barely able to stand trial. I mean, doesn't the answer rise or fall on those kinds of findings? Absolutely, Your Honor. And that's why I think a remand for further findings by the district court is required. The district court ruled as it did because it felt like it had no alternative. Prior to Edwards it felt like. As soon as he passed the test for knowingly and voluntarily waiving his right to counsel, and the district court did do an extensive colloquy with him regarding waiving that right, the district court thought at that point he has a right to counsel. I think the district court used the word absolute at one point. And so there was no further analysis as to whether this actually was malingering or not, or whether this actually did preclude him from adequately representing himself at trial. And that's why I think a remand to the district court for further findings. And there are challenges with respect to putting the pieces back to where they were in 2006. But, again, I think that if the case is remanded, the defendant who shows up back before Judge Letts is going to be the exact same guy who was there in 2006 with the exact same crazy, irrational, nonsensical legal theories that he's going to try to present once again to the district court. And I think having further evaluations concerning this specific issue is appropriate, and that's what I would urge the court to do. One final issue regarding the sentence. If Mr. Ferguson had any rationality to him, he would have accepted the government's plea offer. The plea offer in this case was for a range of 210 to 262. We're perfectly sane people, do that all the time, and we're sorry. I have those plans every week, Your Honor. But I agree that if this was malingering, at some point it would have stopped. He would have realized this is not working. I'm looking at 480 months in prison. At some point he would have shut down the nonsense and said, I'm going to try to save, you know what, either prior to trial or prior to sentencing. And the fact that he took this approach all the way through the district court, still has it today, will probably write me a nasty letter when I tell him about the argument that I didn't raise these issues with the court. This is his defense, and I hope it doesn't go with him to the grave. I hope the court revams this case for further proceedings concerning the Edwards issue and also vacates the sentence in post. Thank you, counsel. The case just argued is submitted, and the arguments of both counsel have been very thoughtful and helpful to us. And that brings us to our final case on It's Still Morning, on the morning calendar. United States v. Fernando Esparza.
judges: Graber, Clifton, Trager